UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                       CASE NO. 4:13-CV-000409 BSM

$17,693,837.10 FROM JOHN HANCOCK
LIFE INSURANCE POLICY NO XXX6473
("the HANCOCK POLICY"); et al                                                      DEFENDANTS *IN REM*

**BRIEF IN SUPPORT OF
MOTION TO DISMISS IN WHOLE OR IN PART THE
VERIFIED CLAIM OF ONE BANK & TRUST, N.A.
FILED SEPTEMBER 18, 2013, THE RESPONSE AND ANSWER OF
ONE BANK & TRUST, N.A. TO VERIFIED COMPLAINT IN REM
FILED SEPTEMBER 24, 2013, AND THE AMENDED AND RESTATED
VERIFIED CLAIM OF ONE BANK & TRUST, N.A.
FILED SEPTEMBER 25, 2013**

On August 29, 2013, the Trustee filed an Emergency Petition for Release of Funds for Support of Beneficiaries and Their Costs and Fees from Funds in Excess of That Claimed by the Complaint for Forfeiture. In that Petition, the Trustee requested release of $1,500,000.00 of the funds currently held by the Government that were seized from John Hancock noting that there was over $4,000,000.00 in "excess" funds even if the allegations in the Government's Complaint are taken as true and those allegations also support forfeiture of the particular asset, which is the cash seized from John Hancock, as a matter of law. Both of these aspects will be contested by the Trustee.

In any case, the Trustee filed his Petition; the Government filed its Response, and the Trustee filed a Reply. The issue was then ripe for decision.

Thereafter, on September 18, 2013, One Bank & Trust, N.A. (the "Bank") filed its "Verified Claim." The Bank's "claim" does this: it purportedly raised the ante over the Government's own assertion of $10,000,000.00 to over $16,000,000.00 through the mechanism of calculating additional items like "pre-judgment interest;" claims on behalf of TARP, and additional unsubstantiated, though verified, allegations hedged throughout with statements like, "it is believed." Following this filing, the Government then filed on September 23, 2013, a Supplemental Response claiming that these now "competing ownership claims to the money" were an additional reason to deny the Trustee's Emergency Petition.

A problem for the Government in asserting this additional argument, however, is that the Bank's "Claim" was untimely. Rule G(5)(a)(ii)(c)(1) of the Supplemental Rules states:

> (5) RESPONSIVE PLEADINGS.
> (a) *Filing a Claim.*
> (i) A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending.
>
> . . .
>
> (C) if notice was not published and direct notice was not sent to the claimant or the claimant's attorney:

> (1) if the property was in the government's possession, custody, or control when the complaint was filed, no later than 60 days after the filing, not counting any time when the complaint was under seal or when the action was stayed before execution of a warrant issued under Rule G(3)(b);
>
> …

The Government seized the funds on June 17, 2013, so they were in the Government's possession at the time the Forfeiture Complaint was filed on July 12, 2013. Sixty days after July 12 was September 10, 2013.

Thereafter, when the problem was apparently realized, the Government sought to restart the Bank's clock. On September 24, 2013, the Government posted on its forfeiture website a notice of the particular forfeiture (three months after it occurred) and noted with that posting:

> Any person claiming a legal interest in the Defendant Property must file a verified Claim with the court within 60 days from the first day of publication (September 24, 2013) of this Notice on this official government internet web site and an Answer to the complaint or motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days thereafter. 18 U.S.C. §983(h)(1) permits a court to impose a civil fine on anyone asserting an interest in property which the court determines was frivolous.

The next day the Bank filed its "Amended and Restated Claim." Still, the claim clock had stopped and there is no provision in the Supplemental Rules allowing the

Government to restart the time for filing claims in concert with and for the benefit of a favored claimant.

In any case, almost all the elements of the claim itself are subject to dismissal because the Bank simply lacks standing to bring them. In *United States v. Premises known as 7725 Unity*, 294 F.3d 954 (8th Cir. 2002), the Court set up the issue:

> To have Article III standing, GMAC must show a sufficient ownership interest in the property to create a case or controversy capable of federal judicial resolution. *United States v. 1998 BMW "I" Convertible*, 235 F.3d 397, 399 (8th Cir. 2000). Ownership interest can be shown by actual possession, control, title, and financial stake. Id. GMAC's ownership interests are defined by state law. *United States v. Tracts 10 & 11 of Lakeview Heights*, 51 F.3d 117, 121 (8th Cir. 1995).

294 F.3d at 957. The Court further elaborated in a recent case:

> Standing in forfeiture cases has 'both constitutional and statutory aspects.' *United States v. Timley*, 507 F.3d 1125, 1129 *8th Cir. 2007) (quoting *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003) (hereinafter Mass Millions Lottery Ticket)). To establish constitutional standing, "a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property…" Id. (quoting *Mass Millions Lottery Ticket,* 326 F.3d at 41). An ownership interest sufficient for Article III standing "can be shown by actual possession, control, title, and financial stake." *United States v. Premises Known as 7725 Unity Avenue North, Brooklyn Park, Minn*, 294 F.3d 954, 956 (8th Cir. 2002). Statutory standing under §853(n) requires that White demonstrate a legal interest in the proceeds of the ZINK stock. *Timley*, 507 F.3d at 1129, 1130 n.2.

*Unites States of America v. White*, 625 F.3d 1073, 1079 (8th Cir. 2012).  In *White*, the Court specifically addressed the issue of whether or not a creditor of the owner had standing to bring a claim to the property seized and decided that they did not.

> We agree with this analysis and hold that a general creditor does not have standing to claim an interest in a particular forfeited asset.

675 F.3d at 1080.  Moreover, that result is bolstered by the explicit exlusion of creditors from the class of persons entitled to ultimately prevail under the innocent owner defense under 18 U.S.C. §983(d)(6)(B).  While the "innocent owner defense" is most relevant in the final steps to be taken as a claimant, the specific exclusion of a general creditor from being able to take that final step is a key indicator that one with that status is simply "not within the zone of interests protected by the law invoked."  *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 12 (2004).

Against this backdrop, everything in the Bank's claim except its security interest for premium reimbursement must be dismissed.  The Bank, at the basic level, does not even assert an injury in fact to itself as to the One Financial Corporation or TARP allegations in Paragraphs 118 – 120 and Exhibit T.  *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 12 (2004). As to all of its other allegations, they are just that: allegations.  The Bank at this point does not even rise to the status of a general creditor

of Layton Stuart, much less the separate entity of the Trust. There is simply no allegation that the Bank has any special interest in that particular "pot" of cash.

The Bank's claim should be dismissed as untimely. In addition, its claim should be dismissed for lacking standing on all but the premium reimbursement issue. The Bank's filing in this regard adds nothing to the issue of granting the Trustee's Emergency Petition and that Petition should be granted.

RESPECTFULLY SUBMITTED,

EICHENBAUM LILES P.A.
124 West Capitol Avenue, Suite 1900
Little Rock, Arkansas 72201
501-376-4531 / 501-376-4531 fax
cparker@elhlaw.com

By: /s/ *Christopher O. Parker*
Christopher O. Parker, AR Bar No. 75-099

JEFF ROSENZWEIG
300 Spring Building #310
Little Rock, Arkansas 72201
501-372-5247
jrosenzweig@att.net

## **CERTIFICATE OF SERVICE**

   I, Christopher O. Parker, do hereby certify that a true and correct copy of the foregoing document has been provided to the person(s) listed below via ECF, this 27th day of September, 2013.

| | |
|---|---|
| Patrick Harris | Greg Hopkins |
| Angela S. Jegley | Stewart Headlee |
| Cameron C. McCree | HOPKINS LAW FIRM |
| US Attorneys | 1000 West 2nd Street |
| PO Box 1229 | Little Rock, AR 72201 |
| Little Rock, AR 72203 | (501) 375-1517 |
| (501)340-2600 | ghopkins@hopkinslawfirm.com |
| Pat.Harris@usdoj.gov | |
| Angela.Jegley@usdoj.gov | |
| Cameron.McCree@usdoj.gov | |

                */s/ Christopher O. Parker*
                Christopher O. Parker